**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Ana Paola B. G.,

Petitioner,

v.

Todd Blanche, et al.,

Respondents.

No. 0:26-cv-04648 (KMM/DLM)

**ORDER**

---

This matter is before the Court on the Petition for a Writ of Habeas Corpus (Pet., Dkt. 1) filed by Petitioner Ana Paola B. G. ("Petitioner" or "Ana"). For the reasons that follow, the Petition is granted in part.

**BACKGROUND**

Ana is a resident of Merriam, Kansas, and a citizen of Mexico. (Pet. ¶¶ 6, 11; Robinson Decl. ¶ 4, Dkt. 7.) She has lived in the United States since December 27, 2005. (Pet. ¶ 11.) She entered the United States on a tourist visa, which expired June 26, 2006. (*Id.* ¶ 12; Robinsons Decl. ¶ 4.) Ana has two children who are U.S. citizens, she and her husband own a home in Merriam, and the couple owns a local business in Kansas City. (Pet. ¶¶ 13–15.) On July 16, 2025, Ana was convicted of Misprision of a Felony, in violation of 18 U.S.C. § 4, in the Western District of Missouri, and sentenced to a prison

term of twelve months and one day. (*Id.* ¶ 17 (citing *United States v. Sanchez-Mendez et al*, No. 4:22-CR-00125-BP-43 (W.D. Mo. July 16, 2025)); Robinson Decl. ¶ 5.)[1]

In October 2025, while Ana was serving her sentence on the misprision-of-a-felony conviction, Immigration and Customs Enforcement and Removal Operations ("ICE/ERO") officers received a notice of a biometric match for Petitioner at the Federal Correctional Institution in Waseca, Minnesota ("FCI Waseca"). (Dkt. 7-1 at 2.) An ICE/ERO Supervisory Detention and Deportation Officer ("SDDO"), identified as "Holien," issued an administrative Form I-200 warrant for Ana's arrest and lodged an Immigration Detainer, Form I-247A, with FCI-Waseca. (Robinson Decl. ¶ 7; Dkt. 7-1 at 2.) The I-200 warrant and the detainer are dated February 11, 2026. (Dkt. 7-3 (I-200); Dkt. 7-4 (Detainer).)

Several months later, on April 13, 2026, Ana was released from prison. (Pet. ¶ 18.) Upon her release, ICE/ERO agents took her into custody at FCI Waseca. (Pet. ¶ 18; Robinson Decl. ¶ 7.) She alleges that the ICE agents who arrested her did not show her any warrant. (Pet. ¶ 18.) Respondents dispute that allegation. ICE Deportation Officer ("DO") William Robinson states "[a]n ICE/ERO DO personally served Petitioner with the I-200." (Robinson Decl. ¶ 7.) After her arrest, ICE/ERO transported Ana to the ICE Field Office

---

[1] A person is guilty of misprision of a felony when (1) a person other than the defendant has committed a felony offense; (2) the defendant had full knowledge of that fact; (3) the defendant failed to notify authorities that the that the crime had been committed; and (4) the defendant took an affirmative step to conceal the crime. Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit, § 6.18.04 (2025 ed.). In Ana's criminal case, she pled guilty to this offense, admitting that she took steps to conceal others' conspiracy to commit money laundering through use of services offered at her place of business, including accepting large amounts of cash from various individuals she suspected were the proceeds of illegal activity. (Dkt. 6-2, Plea Agreement.)

in Fort Snelling, Minnesota for administrative processing. (Robinson Decl. ¶ 7.) Once at the ICE/ERO Field Office, an SDDO issued a Form I-862, Notice to Appear ("NTA"), charging Ana as inadmissible under Section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 237(a)(1)(B). (Robinson Decl. ¶ 8.) Section 237(a)(1)(B) provides that after a person is admitted on a nonimmigrant visa and remains in the United States for a time longer than permitted, she is subject to removal. 8 U.S.C. § 1227(a)(1)(B).

ICE is currently holding Petitioner at the Crow Wing County Jail. (Pet. ¶ 25; Robinson Decl. ¶ 9.) Petitioner prepared a *pro se* motion to request bond with the help of her former counsel in May 2026 and mailed it to the Fort Snelling Immigration Court. (Pet. ¶ 20.) In her removal proceedings, she also applied for cancellation of removal and adjustment of status under 8 U.S.C. § 1229b(b) and requested asylum in the United States. (Pet. ¶ 21.) An immigration judge ("IJ") ordered Petitioner removed from the United States to Mexico on June 17, 2026. (Pet. ¶ 21; Robinson Decl. ¶ 10.) Ana alleges that she asked the IJ about the request for bond that she mailed to the Immigration Court in May, but the IJ explained that she had not received it. (Pet. ¶ 22.) She appealed the IJ's ruling, and it remains pending with the Bureau of Immigration Appeals. (Pet. ¶ 24; Robinson Decl. ¶ 10.)

## DISCUSSION

Petitioner raises several claims in her Petition. First, Ana alleges that she was arrested without a valid administrative warrant and that Respondents did not have a valid basis to arrest her without a warrant under 8 U.S.C. § 1357(a)(2). (Pet., Count One.) Second, she claims that Respondents failed to follow their own regulations governing

procedures to be taken when ICE arrests a noncitizen for purposes of removal proceedings. (Pet., Count Three.) Finally, she alleges that Respondents have unlawfully detained her without a bond hearing in violation of her Fifth Amendment rights under the Due Process Clause. (Pet., Count Two.) Specifically, she claims that she is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) because she was admitted to the United States on a visitor visa; she is not subject to mandatory detention under § 1226(c) because misprision of a felony is not a crime involving moral turpitude under § 1227(a)(2)(A)(i); and as a result, she must be detained under § 1226(a), under which she is entitled to a bond hearing. (*Id.*)

## I. Legal Standard

District courts may grant a petition for a writ of habeas corpus when the petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner has the burden of proving his detention is illegal by a preponderance of the evidence. *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025).

## II. Unlawful Arrest Claims

In Counts One and Three of the Petition, Petitioner challenges the lawfulness of the procedures Respondents followed in arresting her. There are "two mechanisms by which 'it is appropriate to arrest an alien during the removal process.'" *Cesar F.F. v. Blanche*, No. 26-cv-2540 (PJS/DTS), Dkt. 8 at 3 (D. Minn. June 2, 2026) [hereinafter *Cesar F.F.* Order] (quoting *Arizona v. United States*, 567 U.S. 387, 407 (2012)). First, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on

whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Second, the law allows for a warrantless arrest in limited circumstances. *See* 8 U.S.C. § 1357(a)(2).

Under the first mechanism, immigration authorities may arrest a noncitizen for the purposes of removal proceedings pursuant to an administrative warrant known as a Form I-200, Warrant of Arrest. *See* 8 C.F.R. § 236.1(b)(1). Such a warrant is valid when it is issued at the same time as ICE issues a notice to appear, or any time after the NTA has been issued. 8 C.F.R. § 236.1(b)(1) ("At the same time of the issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest."); *Martha C.G.P. v. Blanche*, No. 26-cv-2308 (DWF/JFD), 2026 WL 1329577, at *3 (D. Minn. May 13, 2026) ("Respondents may arrest a noncitizen using a Form I-200 only if the Form I-200 issues at the same time or after the Department of Homeland Security issues an NTA.").

The second means of arresting a noncitizen is under the warrantless-arrest authority provided in 8 U.S.C. § 1357. The Supreme Court has explained that when "no federal warrant has been issued, [federal] officers have more limited authority" to carry out arrests pursuant to a warrant. *Arizona v. United States*, 567 U.S. 387, 408 (2012). In the provision of § 1357 relevant here, a warrantless arrest is permissible only if there is "reason to believe that the alien so arrested is in the United States in violation of any [immigration] law or regulation and is likely to escape before a warrant can be obtained for his arrest[.]" 8 U.S.C. § 1357(a)(2). By its plain language, § 1357(a)(2) contains two separate requirements: (1) that the individual is in the United States in violation of immigration laws; and (2) that

he is likely to escape before a warrant can be obtained for his arrest. And in this context, "the term 'reason to believe' . . . means constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).

Petitioner argues that her arrest complied with neither the first nor the second mechanism because (1) the I-200 warrant was not issued at the same time as the NTA or after it, and (2) there was no basis for a warrantless arrest under 8 U.S.C. § 1357. Starting with the latter of these two contentions, Respondents do not argue there was probable cause to believe Ana was likely to escape before a warrant could be obtained. (*See* Resp., *passim*.) Indeed, when they learned of her location and the basis for their belief that she is not lawfully present in the United States, she was confined at FCI Waseca. At that point, well before there was any reasonable basis to think that Ana was likely to escape before a warrant could be obtained, Respondents were able to get an administrative warrant. Accordingly, the Court finds no basis to conclude that a warrantless arrest pursuant to 8 U.S.C. § 1357(a)(2) was supported on these facts. The resolution of Ana's unlawful arrest claim in Count One of the Petition, therefore, turns on whether the I-200 issued in this case was valid. As explained below, it was not.

The Supreme Court has not addressed whether an I-200 warrant issued before an NTA can justify an arrest of a noncitizen for purposes of removal proceedings. Neither has the Eighth Circuit Court of Appeals. But in numerous decisions from the District of Minnesota, courts have repeatedly held that an arrest of a noncitizen is invalid when the NTA is not issued prior to or contemporaneously with the issuance of a Form I-200. *Tha I. v. Blanche*, No. 26-CV-3516 (LMP/DLM), 2026 WL 3093493, at *1 (D. Minn. Oct. 16,

2026); *Alejandro C. G. v. Blanche*, No. 26-cv-3117 (ECT/EMB), 2026 WL 2838175, at *2 (D. Minn. Sept. 22, 2026) (collecting cases); *Islamuddin A. v. Blanche*, No. 26-cv-3340 (ECT/JFD), 2026 WL 2546280 (D. Minn. Aug. 28, 2026). The Court finds these cases persuasive and follows them here.

Respondents could easily have issued an NTA for Petitioner when they learned she was at FCI Waseca serving a criminal sentence. Indeed, they prepared the I-200 warrant when they discovered that fact. But for reasons left unexplained by the record, they did not prepare an NTA at the same time. The evidence in this case is clear—the I-200 warrant for Ana's arrest *preceded* issuance of the NTA. The administrative warrant issued on February 11, 2026. The NTA did not issue until April 13, 2026, more than two months after the warrant issued. The I-200 did not issue "[a]t the time of the issuance of the notice to appear, or at any time" after the NTA was issued. 8 C.F.R. § 236.1(b)(1). What happened in this case is the exact reverse of the procedure established by the applicable DHS regulation. 8 C.F.R. § 236.1(b)(1).

As numerous cases have explained, the issuance of an NTA is a prerequisite to the commencement of removal proceedings. Indeed, "an NTA is a case-initiating pleading – like an indictment in a criminal case – that serves as the bases for commencing a grave legal proceeding." *Alejandro C.G.*, 2026 WL 2838175, at *3 (quoting *Jesus F.D. v. Mulin*, No. 26-cv-2486 (PJS/DTS), slip op. at 5–6 (D. Minn. June 10, 2026), ECF No. 10) (cleaned up). "Thus, a warrant issued before removal proceedings have begun purports to exercise authority that does not yet exist." *Id.* (quoting *Jesus F.D.*, slip op. at 5–6). Because Respondents arrested Ana on an I-200 warrant that was issued long before issuance of an

NTA, the officers executing the arrest were not validly exercising ICE's authority to make an arrest on a warrant.

Respondents acknowledge the caselaw from courts within the District of Minnesota holding that the issuance of an NTA must be issued before an I-200 warrant or the two must be issued contemporaneously. (Resp. at 4.) The Court has carefully considered Respondents' arguments to the contrary (Resp. at 5–11), but they do not convince the Court that a different analysis is appropriate. Respondents' arguments fail to give effect to the plain language of 8 C.F.R. § 236.1(b)(1). And the Court perceives no conflict between its reading of § 236.1(b)(1) and the other statutory and regulatory provisions relied upon by Respondents (e.g., 8 U.S.C. § 1357, 8 C.F.R. §§ 287.5, 287.8(c)(2)(i)–(ii)).

This Court has previously held that release from custody is appropriate when an arrest is made without a valid warrant and immigration officers did not have probable cause to support a warrantless arrest under § 1357(a)(2). *Emily Andreia N.V. v. Blanche*, No. 26-cv-2570 (KMM/EMB), 2026 WL 2209844, at *4–5 (D. Minn. July 31, 2026). Because the Court concludes that Ana was not arrested on a valid warrant at the time of her arrest, and because Respondents have not shown that her arrest complied with § 1357(a), the Court will order her release.[2]

[2] Because the Court concludes that these flaws entitle Petitioner to relief, the Court does not address the remaining claims in Ana's Petition.

**ORDER**

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. Petitioner Ana Paola B. G.'s Petition for a Writ of Habeas Corpus (Dkt. 1) is **GRANTED IN PART**.

2. Respondents are **ORDERED** to release Petitioner Ana Paola B. G. within 24 hours of the issuance of this Order, at a time and place communicated in advance to Petitioner's counsel, and with all her possessions.

3. Nothing in this Order precludes Respondents from later arresting or detaining Petitioner pursuant to lawful authority and in compliance with applicable statutory and regulatory requirements.

4. Within 48 hours of this Order, Respondents shall file an update on the docket showing that such release has taken place.

**Let Judgment be entered accordingly**.

Date: November 24, 2026

*s/Katherine Menendez*
Katherine Menendez
United States District Judge